UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:24-CR-5-TAV-DCP-1 |
| BRADLEY JOHN KELLER, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Debra C. Poplin on June 12, 2024 [Doc. 34]. The R&R addresses defendant's Motion to Dismiss Indictment [Doc. 24]. The government responded [Doc. 27], and Judge Poplin held a hearing on May 15, 2024 [Doc. 32]. Judge Poplin then issued the R&R [Doc. 34], recommending that the Court deny defendant's motion to dismiss. Defendant has filed objections to the R&R [Doc. 37], the government has responded [Doc. 45], and filed a notice of supplemental authority [Doc. 50-1] and the matter is now ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons that follow, the Court will **SUSTAIN in part** and **OVERRULE in part** defendant's objections [Doc. 37], **REJECT in part** and **ACCEPT in part** the R&R [Doc. 34], and **DENY** defendant's Motion to Dismiss Indictment [Doc. 24].

I.  Background

The Court presumes familiarity with the facts of this case and will only recite facts necessary to the determination of the instant motions.  Moreover, the Court notes that the parties do not object to the factual basis in the R&R, and therefore, the Court will adopt the following facts from the R&R [Doc. 34].

> According to the Government, officers went to Defendant's Monroe County home on October 29, 2023, after Defendant told the 9-1-1 dispatcher that he would "handle" a neighbor's noisy bonfire and that "someone's fixing to die" [Doc. 27 pp. 1–2].  The officers asked Defendant to come out of his home using a public address system [*Id.* at 2]. Defendant came onto his porch with a shotgun and fired at the officers six times [*Id.*].  Following Defendant's subsequent arrest, officers entered Defendant's home with the consent of his wife and retrieved two shotguns and one rifle [*Id.*].  Defendant denies these facts generally and contends that he did not know that officers were in his yard [Doc. 31 p. 1].  Defendant agrees, however, that his § 922(g)(1) charge arises out of his alleged possession of firearms in his home [Doc. 24 p. 17].
>
> In 2011, Defendant entered a guilty plea to distribution of oxycodone and hydrocodone, possession of oxycodone and hydrocodone with intent to distribute, and possession of a firearm in furtherance of drug trafficking [No. 3:10-CR-81-TAV-HBG, Doc. 20, Judgment].  The factual basis for Defendant's plea agreement details two controlled buys at Defendant's home [No. 3:10-CR-81-TAV-HBG, Doc. 15 pp. 3–4].  During the execution of a search warrant for Defendant's residence, Defendant had oxycodone and hydrocodone pills, $280, and a loaded handgun in his pants pockets [*Id.* at 4].  The Government proffers that Defendant Keller also has prior felony convictions for reckless endangerment with a weapon and possession of methamphetamine for resale [Doc. 27 p. 8].  In oral argument, the Government also noted that Defendant has a prior felony conviction for statutory rape.

[*Id.* at 1–2].

The indictment charges defendant with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) [Doc. 10].  In his motion

2

to dismiss the indictment, defendant argues that § 922(g)(1) violates his Second Amendment right to bear arms in light of the Supreme Court's decision in *New York State Rifle & Pistol Assoc. Inc. v. Bruen*, 597 U.S. 1 (2022) [Doc. 24]. Defendant argues that § 922(g)(1) is unconstitutional both on its face and as applied [*Id.*].

In the R&R, Judge Poplin concluded that defendant's motion to dismiss should be denied [Doc. 34]. Defendant now objects to that conclusion [Doc. 37].

## II. Standard of Review

The Court reviews *de novo* those portions of the R&R to which the defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Accordingly, the Court considers the R&R, the motion to dismiss, the parties' underlying and supporting briefs, and the defendant's objections, all in light of the applicable law.

## III. Analysis

### A. Prior Second Amendment Jurisprudence

Before delving into defendant's specific objections, a brief review of the relevant Second Amendment jurisprudence is appropriate. The Second Amendment states:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. CONST. amend. II.

In 2008, the Supreme Court concluded that the Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). But the Court acknowledged that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626.

3

As a result, the Court stated that "nothing in [this] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." *Id.*

Two years later the Supreme Court held that the Second Amendment right was applicable to the states through the Fourteenth Amendment's due process clause. *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010). A portion of the opinion joined only by a plurality of the Court reiterated that "[w]e made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons[.]" *Id.* at 786 (internal quotation marks omitted).

After the Supreme Court's decisions in *Heller* and *McDonald*, the Sixth Circuit adopted a two-prong approach for resolving Second Amendment challenges. *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012). Under the first prong, the court asked whether the challenged law burdens conduct that falls within the scope of the Second Amendment right, as historically understood. *Id.* And, under the second prong, if the historical evidence was inconclusive or suggested that the regulated activity is not categorically unprotected, the court looked at the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights. *Id.* However, citing the language from *Heller*, the Sixth Circuit stated that the Congress's prohibition on felon possession of firearms is constitutional. *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010) (citing *United States v. Frazier*, 314 F. App'x 801 (6th Cir. 2008)).

4

More recently, the Supreme Court held in *Bruen* that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home. *Bruen*, 597 U.S. at 10. In its holding, the Supreme Court rejected the two-part approach adopted by the Sixth Circuit and other Circuits. *Id.* at 17. Instead, the Court stated:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside of the Second Amendment's 'unqualified command.'

*Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

### B. Defendant's Motion and R&R

In light of *Bruen*'s holding, defendant moved to dismiss the indictment against him, arguing that § 922(g)(1) is unconstitutional under the Second Amendment [Doc. 24].

In the R&R, Judge Poplin finds that § 922(g)(1) remains presumptively lawful [Doc. 34, p. 8]. She states that the Sixth Circuit's pre-*Bruen* case law, holding that § 922(g)(1) is constitutional, remains binding because (1) *Bruen* did not abrogate *Heller*, on which the Sixth Circuit relied for that holding; and (2) Sixth Circuit cases upholding the constitutionality of § 922(g)(1) were not based upon the means-ends scrutiny test abrogated by *Bruen* [*Id.*]. Thus, Judge Poplin concluded that the Court is bound by the

5

Sixth Circuit's pre-*Bruen* caselaw holding that § 922(g)(1) is facially constitutional in response to a Second Amendment challenge [*Id.* at 14].

Judge Poplin also concluded that § 922(g)(1) is constitutional as applied to defendant [*Id.* at 15]. Judge Poplin notes that the plain text of the Second Amendment secures the right to keep and bear arms to "the people" and pre-*Bruen* case law in this Circuit recognized that felons are disqualified from being among "the people" to whom the right is guaranteed [*Id.* at 16]. Further, Judge Poplin highlights language from *Bruen* that the Second Amendment right applies to "law-abiding citizens" [*Id.* at 16–18]. Judge Poplin then concludes that, because felons are not members of "the people," defendant's conduct is not protected by the Second Amendment under the first part of the *Bruen* test [*Id.* at 19]. Judge Poplin noted that, since the first prong of *Bruen* does not apply, the government need not show that the regulation comports with the Nation's historical regulation of firearms, but, even if the Court reached that question, § 922(g)(1) is constitutional as applied to defendant whose felonies are indicative of his dangerousness [*Id.* at 19–21].

### C. *Rahimi* Decision

Approximately nine days after the magistrate judge issued the R&R, the Supreme Court addressed whether 18 U.S.C. § 922(g)(8)'s prohibition of an individual possessing a firearm while subject to a domestic violence restraining order violated the Second Amendment. *United States v. Rahimi*, 144 S. Ct. 1889 (2024). In upholding this restriction, the Supreme Court noted that "[s]ince the founding, our Nation's firearm laws

6

have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 1896. Thus, the Court concluded that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed" consistent with the Second Amendment. *Id.* at 1901.

D. **Defendant's Objections to R&R**

A few days after the *Rahimi* decision, defendant filed his objections to the R&R, arguing that while the R&R correctly identifies the test set forth in *Bruen*, it sidesteps the constitutionally mandated test by holding that defendant is not one of "the people" to which the text of the Second Amendment refers, and therefore, possessing a firearm inside the home is not presumptively lawful for defendant [Doc. 37, p. 1].

Defendant contends that the R&R incorrectly concludes that *Bruen*'s holding does not disturb the constitutionality of § 922(g)(1) [Doc. 37, p. 2]. Specifically, defendant states that, in so holding, the R&R relies on dicta from *Bruen* and the Sixth Circuit's subsequence reliance on that dicta; but dicta is not controlling [*Id*.]. Moreover, the dicta in *Bruen* only asserted that felon disarmament statues are presumptively lawful, not categorically so, and thus, § 922(g)(1) is at least subject to as-applied challenges [*Id*.]. But the R&R mishandles defendant's as-applied challenge by (1) incorrectly applying the first prong of the *Bruen* test; and (2) avoiding application of the second prong, the historical analysis, completely [*Id*.].

As to the first prong of the *Bruen* test, defendant argues that the R&R presents a circular argument that defendant is not one of the "people" under the Second Amendment

7

because, to be one of the "people," one must abide by the law, and defendant is accused of not abiding by the felon disarmament law, so therefore he is not one of the "people" [*Id.* at 3]. Additionally, the R&R does not include a definition of the term "law abiding," and does not engage with specific examples that demonstrate the unworkable nature of the law-abiding/non-law-abiding distinction [*Id.*]. Defendant argues that *Bruen*'s first prong should focus on the conduct involved, not whether a person is included in the vague category of "law-abiding persons" [*Id.*]. Additionally, the R&R notes that the Second, Third, Fifth, Ninth, and Eleventh Circuits have all defined "the people" as all Americans who are part of the national community, but then uses dicta from *Bruen* and *Heller* to reach the opposite conclusion [*Id.*]. *Heller* and *Bruen* use the term "individual" and in no way limit their holding to citizens [*Id.*]. Thus, the Supreme Court's own language demonstrates that Second Amendment rights are not limited to citizens and "the people" is an inclusive term as used throughout the Constitution [*Id.*]. Defendant contends that his challenge survives the first prong of the *Bruen* test because he is alleged to have possessed firearms in his home, and *Bruen* says that this conduct is presumptively protected [*Id.* at 5].

Next, defendant states that the R&R fails to even determine whether a historical analogue exists for subjecting a person to a lifelong ban for the felonies for which defendant had been convicted [*Id.* at 5]. Defendant contends that this is procedural error [*Id.*]. To the extent that the R&R states that, if it reached the question, it would find § 922(g)(1) constitutional as applied to defendant because his felonies are indicative of

8

violence, defendant contends that the R&R incorrectly applies the second prong of *Bruen* and reaches an incorrect result in its own test [*Id.*]. Defendant contends that his drug convictions are not crimes of violence, nor is his conviction for reckless endangerment [*Id.*].

Finally, defendant argues that *Rahimi* succinctly stated that an individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment [*Id.* at 6]. Defendant argues that, although the Supreme Court did not specifically address § 922(g)(1) in that opinion, the fact that the only type of disarmament noted in *Rahimi* is temporary disarmament displays the continuing issues around § 922(g)(1) [*Id.*].

The government responded in opposition, arguing that the magistrate judge correctly rejected both defendant's facial and as-applied challenges to § 922(g)(1) [Doc. 45].

E. ***Williams* Decision**

While the R&R and objections were pending before the Court, the Sixth Circuit decided *United States v. Williams*, 113 F. 4th 637 (6th Cir. 2024). The Sixth Circuit held that, in light of *Bruen*'s newly required history-and-tradition analysis, which was not applied when the Sixth Circuit previously upheld § 922(g)(1)'s constitutionality, its prior precedent was no longer binding. *Id.* at 645, 648.

Applying *Bruen*'s first prong, the *Williams* Court first addressed whether the defendant's conduct fell within the Second Amendment's plain text. *Id.* at 648. In

9

addressing that question, the Sixth Circuit concluded that "the people" in the Second Amendment refers to all members of the political community and does not draw a distinction between felons and non-felons. *Id.* at 649. Thus, the court concluded that the Second Amendment's plain text presumptively protected the defendant's conduct because he is a member of "the people" claiming the right to possess a gun. *Id.* Because § 922(g)(1) burdens that right, the Sixth Circuit turned to whether that burden is consistent with the principles underpinning our historical tradition of regulating firearms. *Id.* at 650.

As to the historical tradition of firearm regulation, the *Williams* Court provided a detailed analysis of historic regulations regarding the possession of firearms by those deemed dangerous. *Id.* at 650–57. The court summarized as follows:

> This historical study reveals that governments in England and colonial America long disarmed groups that they deemed to be dangerous. Such populations, the logic went, posed a fundamental threat to peace and thus had to be kept away from arms. For that reason, governments labeled whole classes as presumptively dangerous. This evaluation was not always elegant. And even though some of those classifications would offend both modern mores and our current Constitution, there is no doubt that governments have made such determinations for centuries. Each time, however, individuals could demonstrate that their particular possession of a weapon posed no danger to peace.

*Id.* at 657.

Turning to the defendant's facial challenge, the Sixth Circuit noted that, to succeed, defendant must show that there exists no set of circumstances under which § 922(g)(1) would be valid. *Id.* But he could not do so, as our nation's history and

10

tradition demonstrate that Congress may disarm individuals that they believe are dangerous, and § 922(g)(1) is an attempt to do so. *Id.*

As to defendant's as-applied challenge, the Sixth Circuit concluded that "§ 922(g)(1) might be susceptible to an as-applied challenge in certain cases." *Id.* Specifically, the court stated:

> In determining whether an individual has met his burden to demonstrate that he is not dangerous, and thus falls outside of § 922(g)(1)'s constitutionally permissible scope, courts—much like the officials of old—must focus on each individual's specific characteristics. That necessarily requires considering the individual's entire criminal record—not just the predicate offense for purposes of § 922(g)(1).

*Id.* at 657–58. The court noted that "certain categories of past convictions are highly probative of dangerousness, while others are less so." *Id.* at 658.

First, there are "crimes against the person" which include "dangerous and violent crimes like murder, rape, assault, and robbery." *Id.* The Sixth Circuit stated that "[o]ffenses in this category speak directly to whether an individual is dangerous" and, while the Court declined to determine whether a prior conviction of a crime in this category is dispositive, it concluded that such is "at least strong evidence that an individual is dangerous, if not totally dispositive on the question." *Id.*

Second, there are crimes that "while not strictly crimes against the person, may nonetheless pose a significant threat of danger." *Id.* at 659. "These crimes do not always involve an immediate and direct threat of violence against a particular person." *Id.* Examples of this type of crime includes drug trafficking and burglary. *Id.* "Ultimately,

11

most of these crimes put someone's safety at risk, and thus, justify a finding of danger." *Id.*

The Sixth Circuit stated that the "final category of crimes is the most challenging to address." *Id.* These include crimes such as mail fraud or making false statements. *Id.* "Often, such crimes cause no physical harm to another person or the community." *Id.*

The Sixth Circuit stated that, when evaluating a defendant's dangerousness, the district court may consider the defendant's entire criminal record. *Id.* And rather than following bright categorical lines, district courts may make informed judgments about how criminals commonly operate. *Id.* at 660. The dangerous determination is fact specific and depends on the unique circumstances of the individual defendant. *Id.* Moreover, in undertaking this analysis, the burden rests on the defendant to show that he or she is not dangerous. *Id.* at 662.

F. **Post-*Williams* Briefing**

After the Sixth Circuit's decision in *Williams*, the government filed a notice of supplemental authority [Doc. 50-1]. The government explained the *Williams* decision and argued that defendant's prior convictions show that he is dangerous [*Id.* at 1–4]. Specifically, the government stated that defendant has prior convictions for statutory rape, reckless endangerment with a weapon, possession of methamphetamine for resale, distribution of a Schedule II controlled substance, distribution of a Schedule III controlled substance, and possession of a firearm in furtherance of a drug trafficking

12

crime [*Id.* at 3]. The government also contends that the circumstances of the instant offense confirm that defendant is dangerous [*Id.* at 4].

The Court invited defendant to file a supplemental brief addressing the impact of *Williams* [Doc. 51], but defendant has not done so.

### G. Application of *Williams*

Applying the Sixth Circuit's binding precedent in *Williams*, the Court as an initial matter will sustain defendant's objections to sections I.B. and I.C.(1) of the R&R.[1] In Section 1.B., the magistrate judge concluded that "Section 922(g)(1) remains Presumptively Lawful," citing to the Sixth Circuit's pre-*Bruen* case law [Doc. 34, pp. 8–9]. But *Williams*, decided after the R&R was issued, expressly rejects the argument that pre-*Bruen* Sixth Circuit cases addressing the constitutionality of § 922(g)(1) under the Second Amendment remain valid. 113 F. 4th at 647–48. Additionally, in Section I.C.(1), the magistrate judge addressed the first prong of the *Bruen* test, and concluded that because felons are not members of "the people," defendant's conduct is not protected by the Second Amendment [Doc. 34, pp. 15–19]. But the Sixth Circuit also rejected that argument, concluding that the Second Amendment's "the people" draws no distinction between felons and non-felons. *Williams*, 113 F. 4th at 649. Accordingly, the Court

---

[1] It appears that the R&R contains a minor typographical error labeling the first two sections with the roman numeral I. For clarity, the Court accepts the first Section I, labeled "Background," [Doc. 34, pp. 1–3] to which no party has objected. The Court's analysis relates, rather, to the second Section I, labeled "Analysis" [*Id.* at 3–21]. And, specifically, the Court rejects the subsections under the second Section I labeled "B. Section 922(g)(1) Remains Presumptively Lawful" [*Id.* at 8–15] and the portion of Section I, subsection C "Section 922(g)(1) is Constitutional as Applied to Defendant," labeled "(1) Textual Analysis" [*Id.* at 15–19]. The Court accepts the subsection under the second Section I, subsection C labeled "(2) Historical Analogue" [*Id.* at 19–21].

13

must sustain defendant's objections to those conclusions, and overrule those sections of the R&R.

Nonetheless, *Williams* is dispositive of defendant's facial challenge to the constitutionality of § 922(g)(1). The Sixth Circuit concluded that, because most applications of § 922(g)(1) are constitutional, the provision is not susceptible to a facial challenge. 113 F. 4th at 657. As a result, the Court finds that defendant's facial challenge to § 922(g)(1) is foreclosed by binding precedent, and defendant's motion to dismiss on that ground is denied.

Turning to defendant's as-applied challenge, applying *Williams*, defendant's claim must fail unless he meets his burden of establishing that he is not dangerous, and therefore, falls outside of § 922(g)(1)'s constitutionally permissible scope. *Id.* But defendant does not present sufficient argument regarding his dangerousness, and therefore, has inherently not met his burden of demonstrating that he is not dangerous. As the Court noted previously, it invited defendant to file a supplemental brief in this matter addressing the impact of *Williams* on the pending R&R and objections [Doc. 51], but defendant failed to do so.

Moreover, in his objections to the R&R, defendant objects to the R&R's conclusion that his "felonies are indicative of violence" by contesting whether his prior convictions are "crimes of violence," citing to cases addressing that question under the Armed Career Criminal Act [Doc. 37, pp. 5–6]. But the R&R does not find that defendant's "felonies are indicative of violence," but rather, that his "felonies are

14

indicative of *his dangerousness*" [Doc. 34, p. 19 (emphasis added)]. And defendant's dangerousness is the correct question in addressing an as-applied challenge under *Williams*. 113 F. 4th at 657–58; *see also United States v. Bell*, ___ F. Supp. 3d ___, 2024 WL 4589812, at *5 (E.D. Mich. 2024) (stating that "the use of violence during prior drug trafficking crimes is not a prerequisite for finding a person dangerous and disarming him"). But defendant presents no objection to the magistrate judge's conclusion that his prior convictions for drug trafficking and use of a firearm in furtherance of drug trafficking displayed dangerousness, and the allegations in the instant case confirm his dangerousness [Doc. 34, pp. 20–21]. Accordingly, the Court accepts Section I.C.(2) of the R&R and adopts the conclusion that § 922(g)(1) is constitutional as applied to defendant because he is a dangerous felon.

## IV. Conclusion

For the reasons stated herein, defendant's objections to the R&R [Doc. 37] are **SUSTAINED in part** and **OVERRULED in part**. The Court will **REJECT in part** and **ACCEPT in part** the R&R [Doc. 34]. Nonetheless, defendant's Motion to Dismiss Indictment [Doc. 24] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE